## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

### NOT FOR PUBLICATION

|  |  |  |
|---|---|---|
| W.J., by his parents and legal guardians, R.J. and A.J., | ) ) ) | |
| Petitioners, | ) ) | No. 21-1342V |
| v. | ) ) | Filed: June 21, 2022 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | ) ) ) | Reissued: July 7, 2022[1] |
| Respondent. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Petitioners R.J. and A.J. seek review of a decision dismissing their request for vaccine injury compensation on behalf of their child, W.J.  Petitioners filed their petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 *et seq.* (the "Vaccine Act"), alleging W.J. suffered chronic encephalopathy (a Table injury) and immunodeficiency issues, including immune-related blood disorders, eczema, and allergies, as a result of receiving the measles, mumps, and rubella ("MMR") vaccine in February 2005. Petitioners claim the vaccine either directly caused the asserted injuries or significantly aggravated W.J.'s pre-existing cerebral and immunological damage.  The Special Master dismissed the claims as untimely under the Vaccine Act's statute of limitations.

For the reasons discussed below, the Special Master's decision to grant Respondent's

---

[1] The Court issued this opinion under seal on June 21, 2022, and directed the parties to file any proposed redactions by July 6, 2022.  On July 5, 2022, Petitioners requested the Court redact the case caption, as approved by the Special Master, but did not propose further redactions.  *See* ECF No. 42.  As such, the Court reissues the opinion publicly in full, with revisions to the case caption and first sentence of the text to protect the identity of Petitioners.

Motion to Dismiss was not arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.  Accordingly, the Court **DENIES** Petitioners' Motion for Review.

## I.   BACKGROUND

### A.   Factual History

Petitioners alleged that W.J. was born a healthy, full-term infant on February 4, 2004, without significant neonatal problems.  Pet. Ex. 1 at 1, ECF No. 1-2.  He received routine vaccinations throughout his childhood, including influenza, hepatitis B, diphtheria-tetanus-acellular pertussis, Haemophilus influenzae type B, pediatric pneumococcal, polio, and MMR.  Pet. Ex. 2 at 1, ECF No. 1-2.  His MMR vaccines were administered on February 24, 2005, and March 15, 2008, without record of adverse reactions.  *Id.*

On March 7, 2006, at the age of two, doctors diagnosed W.J. with a speech delay.  Pet. Ex. 6 at 13, ECF No. 1-2.  W.J.'s blood tests showed high platelet levels and low lymphocyte levels.  Pet. Ex. 9 at 1, ECF No. 1-2.  Subsequent audiologic evaluation in June 2006 revealed adequate hearing.  *Id.*  The following year, on January 5, 2007, doctors diagnosed W.J. with autism and pervasive developmental delay.  Pet. Ex. 39 at 17, ECF No. 20-1.  Pediatric neurologists determined that W.J.'s developmental delays and language disorder required intensive therapeutic programs.  Pet. Ex. 13 at 1, ECF No. 1-2.

Over the next 15 years, W.J. presented to doctors for various physical and psychological ailments.  From June 22 to 25, 2007, he was hospitalized with a fever and swollen glands consistent with a bacterial infection.  Pet. Ex. 12 at 11, ECF No. 1-2.  On February 20, 2012, he was assessed by doctors for "unstable atopic dermatitis" and tested for lead poisoning.  Pet. Ex. 7 at 7, ECF No. 1-2.  On February 19, 2014, he returned for treatment of severe eczema and rhinitis, conditions that the treating physician noted had gone untreated over the objections of W.J.'s healthcare

providers.  *Id.* at 10.  W.J.'s behavioral problems, including irritability, mood swings, and poor sleep, prompted doctors to perform a comprehensive psychiatric evaluation on July 19, 2018.  Pet. Ex. 71 at 59, ECF No. 1-2.  Following this evaluation, doctors attempted to manage W.J.'s behaviors over the next three years with antipsychotic medications.  *Id.* at 3.  In February 2019, genetic testing revealed that W.J. has an MTHFR homozygous A1298C mutation and duplication of the Xq28 chromosome of uncertain clinical significance.  Pet. Ex. 11 at 4, 6, 8, ECF No. 1-2; Pet. Ex. 14 at 1, ECF No. 1-2.

Based on a review of the medical records, the Special Master found that at no point did doctors diagnose W.J. with encephalopathy or immunodeficiency disorder.  *See* Decision Den. Comp. at 8, ECF No. 29.

## B.    Procedural History

On May 7, 2021, Petitioners filed a claim for vaccine injury compensation on behalf of W.J.  *See* Pet., ECF No. 1.  According to Petitioners, the MMR vaccine was inappropriately administered to W.J. in contravention of the vaccine's warnings because of W.J.'s Xq28 chromosomal duplication.  *Id.* ¶ 17.  As a result, Petitioners contend that W.J. has chronic encephalopathy and immunodeficiency issues caused either directly by the vaccine or by its significant aggravation of the pre-existing damage related to his chromosomal abnormality.  *Id.* ¶ 19.  They further contend these injuries led to several bouts of immune-related blood disorders and an infection resembling mumps that resulted in hospitalization.  *See id.* ¶¶ 21–64.

On June 3, 2021, the Special Master held an initial status conference, during which she raised the issue of the statute of limitations.  *See* Order dated June 3, 2021, at 1, ECF No. 14. Before addressing the merits of the claims, she directed Respondent to file a Rule 4(c) Report and Motion to Dismiss.  *Id.* at 4–5.  In accordance with this direction, Respondent moved to dismiss,

contending Petitioners filed their claims beyond the 36-month statute of limitations and that no basis for equitable tolling applied. *See* Resp't's Mot. to Dismiss, ECF No. 16. Respondent asserted that W.J.'s injuries, if they did exist, began to manifest by March 2006 when he was diagnosed with a speech delay. *See* Resp't's Rule 4(c) Report at 8, ECF No. 15. Accordingly, Respondent argued that the Vaccine Act required Petitioners to file a claim by no later than March 2009. *Id.*

The Special Master granted Respondent's Motion to Dismiss for failure to file a timely action under the Vaccine Act. ECF No. 29 at 2. Although the Special Master discussed the merits of Petitioners' claims throughout the decision, she dismissed the claims solely on the basis of the statute of limitations. *Id.* at 21. The Special Master explained that even if Petitioners were able to establish a viable Table Claim, cause-in-fact injury, or significant aggravation injury, their petition was filed beyond the Vaccine Act's 36-month filing period, which begins to run upon "the first symptom or manifestation of onset or of the significant aggravation of such injury." *Id.* at 8–9 (citing 42 U.S.C. § 300aa-16(a)(2)). Because Petitioners based their Table Claim on the MMR vaccine administered on February 24, 2005, and a Table Claim must manifest within 15 days of vaccination, the Special Master found they were required to file that claim no later than March 11, 2008. *Id.* at 12. Likewise, if W.J.'s speech delay—the alleged first manifestation of his chronic encephalopathy—was diagnosed on March 7, 2006, Petitioners were required to file the claim for a cause-in-fact injury by March 7, 2009.[2] *Id.* at 13. Similarly, the Special Master found that Petitioners were required to file a cause-in-fact injury claim related to any immunodeficiency issues by March 9, 2009, at the earliest, or April 8, 2017, at the latest. *Id.* at 14–15 (calculating

---

[2] The Special Master also noted that if W.J.'s autism diagnosis on January 5, 2007, was a first symptom or manifestation of the alleged chronic encephalopathy, the filing period expired on January 5, 2010. ECF No. 29 at 13.

36-month filing period based on abnormal blood tests on March 9, 2006, and April 13, 2007; unstable atopic dermatitis diagnosis on February 20, 2012; hospitalization on June 22–24, 2007; and high mumps count on April 8, 2014).  She applied the same standard to the significant aggravation claim, finding it time-barred for the same reasons.  *Id.* at 15.

The Special Master also rejected Petitioners' equitable tolling arguments.  *Id.* at 16, 17–18. Although W.J. was an infant when he received the MMR vaccine, she held Petitioners, as his parents, retained the ability to file a claim on his behalf.  *Id.* at 16.  The Special Master therefore concluded that W.J.'s mental incapacity was not an extraordinary circumstance warranting equitable tolling.  *Id.*  She also determined that the doctrine of fraudulent concealment did not apply because Petitioners failed to plead facts demonstrating Respondent's alleged fraudulent conduct prevented them from timely pursuing compensation.  *Id.* at 17–18.

On March 14, 2022, Petitioners filed a Motion for Review of the Special Master's decision. *See* Pet'rs' Mot. for Review, ECF No. 36; Pet'rs' Mem. of Obj., ECF No. 36-1.  Petitioners challenge several aspects of the decision, including that the Special Master raised the statute of limitations issue sua sponte during the initial status conference and applied a purportedly incorrect legal standard to the motion.  ECF No. 36-1 at 6.  On April 14, 2022, Respondent responded to Petitioner's motion.  *See* Resp't's Resp. to Pet'rs' Mot. for Review, ECF No. 39.  It argues that the Special Master acted within her discretion by addressing timeliness as a potential threshold bar to recovery and properly applied both the standard of review and the case law governing equitable tolling.  *Id.* at 12, 14.

## II.   LEGAL STANDARDS

### A.   Review of a Special Master's Decision

This Court has jurisdiction to review a special master's decision upon the timely request

of either party.  42 U.S.C. § 300aa-12(e)(2).   Under the Vaccine Act, a court deciding a motion for review may:

> (A) uphold the findings of fact and conclusions of law of the special master's decision, (B) set aside any findings of fact and conclusions of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or (C) remand the petition to the special master for further action in accordance with the court's direction.

*Id.* §§ 300aa-12(e)(2)(A)–(C).  The Court employs "a highly deferential standard" when reviewing a special master's decision.  *Hines v. Sec'y of Health & Hum. Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991); *Munn v. Sec'y of Health & Hum. Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992) (holding that findings of fact receive "great deference" under an "arbitrary and capricious" standard, legal conclusions are reviewed under the "not in accordance with law" standard, and discretionary rulings are reviewed for "abuse of discretion").  If the special master has "considered the relevant evidence of record, drawn plausible inferences[,] and articulated a rational basis for the decision," reversible error will be "extremely difficult" to demonstrate.  *Lampe v. Sec'y of Health & Hum. Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000); *see Hayman v. United States*, No. 02-725V, 2005 WL 6124101, at *2 (Fed. Cl. May 9, 2005).

On a motion for review, it is not the Court's role "to reweigh the factual evidence."  *Doe 93 v. Sec'y of Health & Hum. Servs.*, 98 Fed. Cl. 553, 565 (2011) (citing *Lampe*, 219 F.3d at 1360). Rather, "the probative value of the evidence [and] the credibility of the witnesses . . . are all matters within the purview" of the special master as fact finder.  *Id.*  The Court should not substitute its judgment for that of the special master even though it may have reached a different conclusion. *Johnson v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 712, 720 (1995).  This deference notwithstanding, when the matter for review is whether the special master's decision was in accordance with law—*i.e.*, when a question of law is at issue—the court reviews the decision de

novo. *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1277–78 (Fed. Cir. 2005).

### B.    Motion to Dismiss Standard

A motion to dismiss for failure to state a claim upon which relief may be granted "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  It is well established that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009).  A "plausible" complaint "does not need detailed factual allegations," but rather only enough "to raise a right of relief" beyond mere speculation. *Twombly*, 550 U.S. at 555.  When reviewing a motion to dismiss for failure to state a claim, the Court may consider all allegations in the complaint and may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (citation omitted); *see Terry v. United States*, 103 Fed. Cl. 645, 652 (2012).  "[A]ll well-pled factual allegations" should be assumed by the court as true and "all reasonable inferences [should be made] in favor of the nonmovant." *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to prevent dismissal. *Iqbal*, 556 U.S. at 678.

In assessing motions to dismiss in the Vaccine Program, special masters have concluded that they "need only assess whether the petitioner could meet the Act's requirements and prevail, drawing all inferences from the available evidence in petitioner's favor." *Herren v. Sec'y of Health*

*& Hum. Servs.*, No. 13-1000V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Warfle v. Sec'y of Health & Hum. Servs.*, No. 05-1399V, 2007 WL 760508, at *2 (Fed. Cl. Spec. Mstr. Feb. 22, 2007).

### III. DISCUSSION

Petitioners raise nine objections to the Special Master's decision dismissing Petitioners' claims as untimely under the statute of limitations. These objections fall roughly into three categories. First, Petitioners contend the Special Master violated separation-of-powers principles by sua sponte ordering Respondent to file a motion to dismiss at the initial status conference. ECF No. 36-1 at 6. Second, they allege the Special Master erred in rejecting their equitable tolling arguments because she allegedly applied the wrong legal standard for reviewing a motion to dismiss. *Id.* at 10–11. Petitioners base this argument on the Special Master's alleged disbelief and rejection of their pleaded facts, which they argue demonstrate extraordinary circumstances and fraudulent concealment that warrants the tolling of the statute of limitations. *Id.* Finally, Petitioners contend the Special Master's decision went beyond the scope of Respondents' dismissal request and improperly ruled on the merits of Petitioners' claims. *Id.* at 8.

Having considered the arguments and record, the Court rejects Petitioners' objections and finds the Special Master acted rationally, within her discretion, and in accordance with law in finding Petitioners' claims time-barred by the statute of limitations. The issue of timeliness was apparent from the face of the Petition, and the Special Master did not force Respondent to adopt a particular legal strategy or position. Further, the Special Master applied the correct legal standard for a motion to dismiss by rejecting legal conclusions and determining that the pleaded facts, even accepted as true, did not justify equitable tolling. Moreover, regardless of whether the Special Master's decision included merits-type rulings, the sole basis of the decision was properly limited

to the statute of limitations question.  Accordingly, the Special Master's decision is upheld.

## A.    The Special Master Did Not Violate Separation of Powers.

Petitioners first object to the Special Master raising the statute of limitations sua sponte during the initial status conference.  *Id.* at 6.  They contend that by directing the parties to brief the issue of timeliness, the Special Master violated the separation of powers or, at the least, created the appearance of impropriety by ordering Respondent to take a particular legal position and preemptively endorsing that position.  *Id.* at 8.  Respondent responds that there is nothing improper about a judge or special master raising a threshold, dispositive issue before reaching the merits of a party's claim.  ECF No. 39 at 8.

The relevant exchange at the initial status conference is brief enough to reproduce in full. On June 3, 2021, the Special Master addressed the parties as follows:

> THE COURT: Okay. So I know you probably are aware of this based on the petition, there is a statute of limitations issue that we will need to address since that's a threshold issue, that is, if the statute of limitations has expired, then the case will be dismissed because it can no longer be brought.  And I think that is something we probably need to deal with sooner rather than later so that we don't use a lot of your time, energy, and money and the Court's time and energy litigating a case where the statute of limitations has expired.
>
> And by talking about this I'm not diminishing in any way the experiences and the difficulty that your family has had.  I just don't want to lead you to have any unrealistic expectations about how the case may proceed.
>
> So I think the best course of action . . . is probably for [Respondent] to file a Rule 4 report with any motion to dismiss or other legal filing with regard to the statute of limitations.  And then I can ask [Petitioner] to file any reply or response which he may wish to do so, and then I can rule on that issue.  [Respondent], what are your thoughts about that plan?
>
> [RESPONDENT'S COUNSEL]: Yes, Special Master, that sounds like an appropriate plan.
>
> THE COURT: [Petitioner], does that plan -- is that plan acceptable with you?

[PETITIONER]: That sounds fair.  Yes.

Tr. at 4:6–5:9, ECF No. 19.  Following the initial status conference, the parties submitted full briefing, which the Special Master subsequently reviewed.  ECF No. 29 at 2.  In her decision, the Special Master noted that she "ordered" Respondent to file a Rule 4(c) Report and Motion to Dismiss on the issue of the statute of limitations.  *Id.*

Petitioners characterize the exchange at the status conference as a significant violation of judicial propriety because it showed the Special Master's desire to dismiss the case.  ECF No. 36-1 at 8.  They argue that her decision "is irreparably tainted by . . . separation-of-powers concerns" because of the so-called general principle that "she who orders the motion to be filed must not adjudge that motion's merit."  *Id.*  However, based on the relevant portion of the transcript, there is no evidence that the Special Master acted improperly by ordering briefing on the statute of limitations.  The issue of timeliness was originally raised by Petitioners—not the Special Master— in the equitable tolling section of the Petition.  *See* ECF No. 1 ¶¶ 80–121.  The Special Master did not abuse her discretion or act contrary to law by recognizing that a patent statute of limitations question could be outcome determinative and deciding that it would be prudent to address the issue at as early a stage as possible.  *Cf. Kreizenbeck v. Sec'y of Health & Hum. Servs.*, 945 F.3d 1362, 1366 (Fed. Cir. 2018) (endorsing use of summary judgment motion "at an early stage of the proceedings" where a party believes "that no material facts are in dispute and they will prevail as a matter of law").  By addressing the threshold timeliness issue before the merits, the Special Master efficiently used judicial resources to save the parties time, energy, and money litigating untimely claims, which is consistent with the goals of the Vaccine Act and applicable rules.  *See* 42 U.S.C. § 300aa-12(d)(2)(A); *see* R. 3(b)(2), Rules of the U.S. Court of Federal Claims, app. B ("Vaccine Rules").

Nor does the transcript reflect that the Special Master ordered Respondent to take a particular position on the statute of limitations or otherwise display bias in favor of dismissal on that basis. The Special Master raised the issue at the status conference by explaining it was likely "the best course of action" for Respondent to file "any motion to dismiss or other legal filing with regard to the statute of limitations." ECF No. 19 at 4:22–25. Although the Special Master could have first inquired whether Respondent intended to raise a timeliness argument and then—having confirmed its intent—ordered briefing, that she reasonably anticipated Respondent's position does not rise to the level of an abuse of discretion. *See Cottingham on Behalf of K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1345 (Fed. Cir. 2020) ("An abuse of discretion occurs if the decision is clearly unreasonable, arbitrary, or fanciful; is based on an erroneous conclusion of law; rests on clearly erroneous fact findings; or involves a record that contains no evidence on which the [special master] could base [her] decision."). And the Special Master's "best course of action" statement most naturally indicates her determination that it was procedurally efficient to resolve the statute of limitations question first, as opposed to suggesting a particular legal argument would improve Respondent's chance of obtaining dismissal. Notwithstanding the briefing order, the substance and scope of the legal arguments Respondent eventually made was entirely up to it, including whether the statute of limitations barred the claims, equitable tolling was warranted, or some other issue should be addressed before or contemporaneous with the issue of timeliness. Moreover, the Special Master solicited any objections from Petitioners (they posed none), *id.* at 5:9, and afforded Petitioners ample opportunity to be heard in opposition to the motion. *See Kreizenbeck*, 945 F.3d at 1366 (holding that, in reviewing the method of adjudicating a petitioner's claim, the material inquiry is whether the special master "afford[ed] each party a full and fair opportunity to present its case and create a record sufficient to allow review of [her] decision").

The Special Master then considered the literature and evidence provided by Petitioners and based her decision squarely on the pleaded facts and relevant law.  ECF No. 29 at 2.

As such, the Court finds that the Special Master did not abuse her discretion in directing the parties to brief the statute of limitations issue following the initial status conference.  The Special Master's decision should not be overturned on this ground.

**B.**      **The Special Master Did Not Misapply the Legal Standard In Ruling on Petitioners' Equitable Tolling Arguments.**

Petitioners next object to the Special Master's rejection of their equitable tolling arguments. ECF No. 36-1 at 14–19.  They contend the Special Master erred by failing to accept the pleaded facts as true for purposes of ruling on the motion to dismiss.  *Id.* at 5.  According to Petitioners, had the Special Master properly construed all reasonable inferences in their favor, she would have determined that the statute of limitations should be tolled because of extraordinary circumstances and the doctrine of fraudulent concealment.  *Id.* at 7.  Respondent responds that although special masters may not disregard well-pleaded facts when ruling on a motion to dismiss, the rules do not require they accept legal conclusions as true purely because they are couched as factual assertions. ECF No. 39 at 15.  Respondent argues that the role of the special master is to draw reasonable inferences from the provided evidence and to determine if a viable claim exists by applying the law to such evidence and inferences.  *Id.*

Although the Vaccine Act and the Vaccine Rules contemplate case-dispositive motions, they do not expressly include a mechanism for a motion to dismiss.  *See* 42 U.S.C. §§ 300aa-12(d)(2)(C)–(D); Vaccine R. 8(d) (providing that "[t]he special master may decide a case on the basis of a written motion[,] . . . [which] may include a motion for summary judgment," but not specifically mentioning a motion to dismiss).  However, Vaccine Rule 1 provides that for any matter not specifically addressed by the Vaccine Rules, the special master "may regulate

applicable practice, consistent with these rules and with the purpose of the Vaccine Act, to decide the case promptly and efficiently." *See* Vaccine R. 1(b).  Vaccine Rule 1 also provides that the Rules of the United States Court of Federal Claims ("RCFC") may apply to the extent they are consistent with the Vaccine Rules.  Vaccine R. 1(c).  Accordingly, there is a well-established practice of special masters' entertaining motions to dismiss under RCFC 12(b)(6), which provides for dismissal based on "failure to state a claim upon which relief can be granted."  *See, e.g.*, *Herren*, 2014 WL 3889070, at *1; *Bass v. Sec'y of Health & Hum. Servs.*, No. 12-135V, 2012 WL 3031505, at *5 (Fed. Cl. Spec. Mstr. June 22, 2012).  This includes in cases where Respondent raised a statute of limitations argument.  *See, e.g.*, *Clubb v. Sec'y of Health & Hum. Servs.*, 136 Fed. Cl. 255, 263 (2018); *J.H. v. Sec'y of Health & Hum. Servs.*, 123 Fed. Cl. 206, 215 (2015).

Section 300aa-16 of the Vaccine Act provides a limitations period for claims arising from vaccines administered after October 1, 1988.  It reads:

> [I]f a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such[.]

42 U.S.C. § 300aa-16(a)(2).  The Federal Circuit has held that the Vaccine Act's limitations period begins to run from the onset of the "first event objectively recognizable as a sign of a vaccine injury by the medical profession at large," *Carson v. Sec'y of Health & Hum. Servs.*, 727 F.3d 1365, 1368 (Fed. Cir. 2013) (quoting *Markovich v. Sec'y of Health & Hum. Servs.*, 477 F.3d 1353, 1360 (Fed. Cir. 2007)), even if the symptom did not result in a diagnosis at the time or was not appreciated until after a doctor definitively diagnosed the injury, *id.* at 1369–70.  Special Masters have regularly dismissed cases filed outside the limitations period, even if by only a single day. *See, e.g.*, *Spohn  v. Sec'y of Health & Hum. Servs.*, No. 95-0460V, 1996 WL 532610 (Fed. Cl. Spec. Mstr. Sept. 5, 1996) (dismissing case filed one day beyond the limitations period), *aff'd*, 132

F.3d 52 (Fed. Cir. 1997); *Cakir v. Sec'y of Health & Hum. Servs.*, No. 15-1474V, 2018 WL 4499835, at *4 (Fed. Cl. Spec. Mstr. July 12, 2018) (dismissing case filed two months beyond the limitations period).

The Federal Circuit has held that the doctrine of equitable tolling can apply to Vaccine Act claims in limited circumstances.  *See Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1340–41 (Fed. Cir. 2011).  To establish that equitable tolling is appropriate, claimants must prove: (1) they pursued their rights diligently; and (2) an extraordinary circumstance prevented them from timely filing their claim.  *K.G. v. Sec'y of Health & Hum. Servs.*, 951 F.3d 1374, 1379 (Fed. Cir. 2020) (citing *Menominee Indian Tribe v. United States*, 577 U.S. 250, 255 (2016)); *see Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").  Extraordinary circumstances exist when the "failure to file was the direct result of a mental illness or disability that rendered [the claimant] incapable of rational thought, incapable of deliberate decision making, incapable of handling [his or her] own affairs, or unable to function in society." *K.G.*, 951 F.3d at 1381.  But "[a] medical diagnosis alone or vague assertions of mental problems are insufficient" to establish extraordinary circumstances.  *Id.* at 1381–82.  To determine whether a mentally incapacitated claimant has demonstrated reasonable diligence, the Court must consider "all relevant facts and circumstances," including whether he or she had a legal guardian and the significance of that relationship.  *Id.* at 1382 (holding that a court should evaluate the significance of a legal guardian based on a number of factors, including "the nature and sophistication of the guardian (parent, lawyer, family member, or third-party), the timing of the institution of the guardianship (before or after the vaccination, for example), . . . the extent to which the claimant's mental incapacity interferes with her relationship and communication with her guardian, [and] the quality and nature

14

of the guardian's relationship with the claimant . . . .").

The doctrine of fraudulent concealment may also toll a statute of limitations where, "assuming due diligence on the part of the plaintiff . . . the misconduct in question 'has been concealed, or is of such character as to conceal itself.'" *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1142 (Fed. Cir. 1996) (citing *Bailey v. Glover*, 88 U.S. 342, 349–50 (1874)). However, "a mere failure to come forward with facts that would provide the plaintiff with a basis for suit does not constitute fraudulent concealment." *Id.* The Court has not located any caselaw applying this doctrine to a petition for compensation brought pursuant the Vaccine Act, nor do Petitioners cite cases on the matter of whether it applies in this context.

Petitioners argue that the Special Master misapplied the legal standard on a motion to dismiss by disregarding several of their factual assertions "simply because she didn't believe them." ECF No. 36-1 at 10. As an example, they note their allegation that W.J. has been unable to communicate for much of his life and is cerebrally incapacitated, which prevented them from fully assessing his injury from the MMR vaccine in time to file a claim. *Id.* at 14–15. They also reference at length the facts surrounding the Omnibus Autism Proceeding ("OAP") as evidence that Respondent concealed the link between the MMR vaccine and autism, which they assert discouraged them from filing a claim. *Id.* at 15–18. The Special Master ultimately rejected their arguments on equitable tolling, finding that "W.J.'s 'mental incapacity' does not serve as 'an extraordinary circumstance,'" ECF No. 29 at 16, and that the fraudulent concealment claim failed due to lack of evidence, *id.* at 18. Petitioners point to the Special Master's statement that she formed "inferences *from the available evidence*" as an example of her alleged legal error because, according to Petitioners, "[e]vidence should not be a factor" when determining whether a party states a viable claim for relief at the pleadings stage. ECF No. 36-1 at 11.

The record reflects that the Special Master acted in accordance with law in dismissing Petitioners' equitable tolling arguments.  The basis for Petitioners' disagreement on this issue apparently stems from a misunderstanding of the role of a special master in ruling on a motion to dismiss.  When determining if a petition states a viable claim for relief, special masters are not bound to accept legal conclusions as true.  Only well-pleaded facts are presumed to be true.  *See Hill v. Sec'y of Health & Hum. Servs.*, No. 19-384V, 2020 WL 7231990, at *2 (Fed. Cl. Spec. Mstr. Nov. 13, 2020) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *United Pac. Ins.*, 464 F.3d at 1327–28.  A petition need only state a plausible claim for relief to survive a motion to dismiss, and special masters are tasked with applying the law to the pleaded facts to determine whether a case should move forward.  *Iqbal*, 556 U.S. at 678.  Although Petitioners may have alleged that extraordinary circumstances existed because of W.J.'s inability to communicate and that Respondent concealed information by contesting the link between vaccines and autism, the Special Master concluded that the sum of these alleged facts did not *as a matter of law* warrant equitable tolling.  In reaching her decision, she assessed "all inferences from the available evidence" but, as Petitioners fail to note, she did so "*in petitioner's favor*."  ECF No. 29 at 15 (emphasis added).

First, in considering whether the statute of limitations should be tolled because of extraordinary circumstances, the Special Master rejected Petitioners' arguments because—as a minor—the law required W.J.'s parents to file a claim on his behalf regardless of his mental capacity.  The Special Master distinguished the circumstances of the instant case from those presented in *K.G.*  In *K.G.*, the Federal Circuit held that equitable tolling may apply in a case involving a vaccine injury suffered by an adult claimant who subsequently became incapacitated due to alcoholism, hospitalization, and amnesia.  *K.G.*, 951 F.3d at 1379.  The Special Master

explained that, although *K.G.* "confirmed an equitable tolling right for incapacitated individuals, nothing in the decision negated a legal representative's rights and responsibilities under the Vaccine Act." ECF No. 29 at 16 (citing *K.G.*, 951 F.3d at 1379). Put another way, the Special Master accepted Petitioners' facts as true—that W.J. had a mental incapacity—but still concluded that these facts did not amount to extraordinary circumstances under the legal principles elucidated in *K.G.* because Petitioners retained the right to sue on his behalf. *See id.* This is not an erroneous application of the standard of review for a motion to dismiss pursuant to RCFC 12(b)(6).

Petitioners argue that an injured party's relationship to their legal guardian is only one factor to be considered under the extraordinary circumstances analysis. ECF No. 36-1 at 15 (citing *K.G.*, 951 F.3d at 1382). According to Petitioners, even if they were required to sue on W.J.'s behalf, they were unable to because his mental capacity and inability to communicate interfered with their ability to assess the basis of the claim. *Id.* Petitioners correctly state the law but, as Respondent noted in its Rule 4(c) Report, the Special Master must "analyze[] the facts to determine whether [the] legal guardianship alleviated the extraordinary circumstance" of the petitioner's mental incapacity. ECF No. 15 at 9 (quoting *K.G.*, 951 F.3d at 1381). In this case, even though Petitioners attempt to thread their argument through W.J.'s speech delay, the Special Master considered all facts in the record and found that this did not amount to extraordinary circumstances. *See K.G.*, 951 F.3d at 1382 ("[T]he reasonable diligence inquiry must also be based on a consideration *of all relevant facts and circumstances*." (emphasis added)). The Special Master found that, as in any vaccine case involving a child, "[t]he Vaccine Act expressly permits a legal representative to file a petition for compensation on behalf of a minor," and W.J.'s injuries objectively manifested prior to the expiration of the statute of limitations. ECF No. 29 at 16. Given the "great deference" afforded to the Special Master in applying the law to the facts of the

case, the Court does not find that her ruling on extraordinary circumstances (or the lack thereof) was arbitrary and capricious.  *Munn*, 970 F.2d at 870.

Second, in considering whether the statute of limitations should be tolled under the doctrine of fraudulent concealment, the Special Master rejected Petitioners' arguments because the facts (accepted as true) did not demonstrate how the alleged fraud prevented them from seeking compensation.  Petitioners argued that Respondent "fostered and promoted the scientific finding" that there is no link between the MMR vaccine and autism.  ECF No. 1 ¶ 100.  Petitioners assert that they included "hard evidence of a link between vaccines and autism" in the form of recent cases involving families who obtained compensation for their child's autism on the basis of a vaccine injury.  ECF No. 36-1 at 12.  But the framing of this narrow issue is important.  For purposes of the Motion to Dismiss, the relevant question before the Special Master was not whether there is a link between vaccines and autism.   The relevant question was whether Petitioners alleged facts demonstrating they were misled by Respondents such that equitable tolling is appropriate because Respondent engaged in fraud.  *See Holmberg v. Armbrecht,* 327 U.S. 392, 396–97 (1946) (noting that fraudulent concealment requires the claimant be misled "without any fault or want of diligence").

Accepting the pleaded facts as true, the Special Master observed that during the period in which Petitioners contended they were misled by Respondent, over 5,100 petitions alleging that vaccines caused autism were filed under the Vaccine Act in the OAP.  ECF No. 29 at 19.  In other words, their argument was significantly undercut by the fact that Respondent's position to the contrary did not dissuade or prevent thousands of other claimants with similar claims from filing suit.  Fraud also typically requires a showing of intent on behalf of the defrauder to make a false or misleading statement.  *See XpertUniverse Inc. v. Cisco Sys., Inc.*, 597 F. App'x 630, 635 (Fed.

Cir. 2015).  The fact that a special master awarded compensation, or Respondent agreed to settle, a vaccine-related injury claim involving autism does not raise such an inference.  Indeed, the Petitioner disavowed any allegation that Respondent engaged in intentional fraud.  ECF No. 1 ¶ 103.  Based on these facts, as well as evidence that the first symptom or onset of W.J.'s injury occurred at the earliest in 2006 (again, accepting Petitioners' allegations as true), the Special Master properly concluded that Petitioners had sufficient time both before and after the OAP to seek compensation.[3]  *Id.*

Lastly, the Court need only briefly address Petitioners' arguments regarding the Fourteenth Amendment.[4]  Petitioners claim that denying equitable tolling in this case would be discriminatory against W.J. on the basis of his disability because courts have not denied such relief to other individuals who suffered from drug- and alcohol-based mental incapacity (for example, in *K.G.*).[5] ECF No. 1 ¶ 114.  The Special Master disagreed, holding that Petitioners—who as W.J.'s parents had the right and responsibility to seek compensation on his behalf—did not demonstrate they were members of a protected class of persons.  ECF No. 29 at 20.  Moreover, the Special Master correctly noted that the Vaccine Act's limitations period does not establish any classifications

---

[3] In their response to the Motion to Dismiss, Petitioners argued that they did not discover Respondent's fraud until they received W.J.'s genetic testing results in March 2019 and were put on notice of the potential claim.  Pet'rs' Mem. of Law in Opp'n to Resp't's Mot. to Dismiss at 17, ECF No. 22.  The Special Master correctly characterized this argument as raising the discovery rule.  ECF No. 29 at 17.  She also correctly rejected it.  The Federal Circuit made clear in *Cloer* that a claim under the Vaccine Act accrues when the first symptom or manifestation of onset occurs, not when the petitioner learned of the alleged cause of his or her injury.  654 F.3d at 1338.

[4] Although Petitioners listed an objection based on this ground, they did not include any substantive argument in their Motion for Review.

[5] It should be noted that the Federal Circuit did not hold that equitable tolling in fact applied in K.G.'s case.  Rather, the Court remanded the case to the special master "to consider all of the relevant facts in the first instance, with the purposes of the Vaccine Act in mind," "under the standard set out in this opinion."  *K.G.*, 951 F.3d at 1382.

(suspect or otherwise) but rather treats all vaccine-injury claimants equally.  *Id.* (citing *Cloer v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 141, 151–52 (2008), *rev'd on other grounds*, 603 F.3d 1341.  Whether a claimant has established that equitable tolling applies is likewise not dependent on any particular classification of claimants.  *See K.G.*, 951 F.3d at 1382.  That the Special Master found the facts and circumstances of this case not to warrant equitable tolling and to be distinguishable from *K.G.* does not amount to an equal protection violation.  Petitioners' argument on review is squarely a disagreement with the Special Master's application of the established case law.  The Special Master did not "disbelieve" pleaded facts on this point; she merely rejected Petitioners' interpretation of the law.  *Id.*

In sum, the Court finds that the Special Master correctly applied the legal standard for a motion to dismiss under RCFC 12(b)(6) in denying equitable tolling of Petitioners' claims.  Thus, there is no cause for reversal on this ground.

**C.      Any Merits-Type Rulings Do Not Provide a Basis to Set Aside the Decision.**

Petitioners' final objection relates to the scope of the Special Master's decision.  They claim the Special Master went beyond the stated grounds of the Motion to Dismiss (*i.e.*, the statute of limitations question) by finding that Petitioners had not proven their factual allegations of injury. ECF No. 36-1 at 9–10.   The Court agrees with Respondent that to the extent the Special Master made rulings on the merits of Petitioners' underlying claims, those rulings did not serve as a basis for her dismissal decision.  *See* ECF No. 39 at 14.  Rather, the decision repeatedly held that—even if Petitioners were able to establish their claims—the Petition was time-barred and that no equitable tolling applied.  *See* ECF No. 29 at 12–13, 14, 15, 16, 18.  And it in no uncertain terms concluded that the case must be "dismissed for failure to timely file the petition within the statute of limitations."  *Id.* at 21.  Accordingly, as the rulings were not necessary to the Special Master's

statute-of-limitations analysis and did not affect the stated basis for dismissal, Petitioners have not shown that any legal error resulted.[6]

## IV.  CONCLUSION

For the reasons set forth above, Petitioners have not shown that the Special Master's decision dismissing their claims on the basis of the statute of limitations was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.  Accordingly, the Special Master's decision is affirmed, and Petitioners' Motion for Review (ECF No. 36) is **DENIED**.  Under Vaccine Rule 30(a), the Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

Dated: June 21, 2022                                          */s/ Kathryn C. Davis*
                                                              KATHRYN C. DAVIS
                                                              Judge

---

[6] As such, the Court need not address whether the substance of these rulings were arbitrary and capricious because such a determination would not save Petitioners' otherwise untimely claims.